UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED
R. TRYE, and HAROLD B. THOMAS

                                                        **COMPLAINT**

                                Plaintiffs,               **JURY DEMAND**

        -against-

THE CITY OF NEW YORK, ERIC L. ADAMS, as Mayor
For the City of New York, JEFFREY B. MADDREY, as
Former Chief of Department, Police Department City of New
York, MIGUEL A. IGLESIAS, as former Chief of Internal
Affairs, Police Department City of New York, ANDREW
C. DICKSON, as Lieutenant, 114th Precinct, EUMIR M.
FERRER, as Lieutenant, 49th Precinct, BRIAN A. GUZMAN,
as Police Officer, 114th Precinct, ANTHONY N. RICCARDI,
as Police Officer, 114th Precinct and Police Officers JOHN
DOES 1 – 20, each sued individually and in their official
capacities as employees of Defendant THE CITY OF NEW
YORK

                                    Defendants
--------------------------------------------------------------------------x

      The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED

R. TRYE, and HAROLD B. THOMAS through their attorney The Sanders Firm, P.C., files this

federal complaint against Defendants THE CITY OF NEW YORK, ERIC L. ADAMS, JEFFREY

B. MADDREY, MIGUEL A. IGLESIAS, ANDREW C. DICKSON, EUMIR M.

FERRER, BRIAN A. GUZMAN, ANTHONY N. RICCARDI, and JOHN

DOES 1 – 20, respectfully set forth and allege that:

## INTRODUCTION

      This federal civil rights action arises from a December 7, 2024, incident at approximately

4:00 A.M. in Queens County, where four Black men—Plaintiffs BENJAMIN A. TRYE (driver),

ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS—were unlawfully stopped, detained, searched, and subjected to excessive force by members of the New York City Police Department. The encounter began as a pretextual traffic stop for alleged tinted windows—without the use of a tint meter—and rapidly escalated into a racially motivated assault and unlawful arrest. Plaintiff HAROLD B. THOMAS was forcibly removed from the vehicle, thrown to the ground, and repeatedly punched by Defendants BRIAN A. GUZMAN and ANTHONY N. RICCARDI while Defendants ANDREW C. DICKSON, EUMIR M. FERRER, and JOHN DOES 1–20 stood by and failed to intervene. Plaintiff BENJAMIN A. TRYE was handcuffed with excessive force, causing pain and potential nerve injury, and was unlawfully held with Plaintiff THOMAS at the 114th Precinct and Queens Central Booking. Despite committing no offense, Plaintiff BENJAMIN A. TRYE was issued a post-arrest summons for a purported violation of Vehicle and Traffic Law § 375(12-a)(2) without a tint meter reading, in direct contravention of law and NYPD policy. Plaintiff THOMAS was charged with Obstructing Governmental Administration and Resisting Arrest—charges ultimately dismissed via an Adjournment in Contemplation of Dismissal entered without his consent.

This incident is not isolated. It reflects a broader pattern of racialized policing and unconstitutional conduct long embedded within the NYPD. Plaintiffs allege that race was a motivating factor in both the initiation and escalation of the traffic stop, and in the City's subsequent failure to correct or discipline unlawful conduct—facts supported by direct and circumstantial evidence, consistent with the framework articulated in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). These include stark racial disparities in traffic enforcement, procedural deviations from established NYPD protocols,

a history of misconduct among the involved officers, and the deliberate failure of high-ranking

City officials to take corrective action despite actual knowledge of the constitutional violations.

The tragic deaths and injuries of civilians like Eric Garner (2014), Delrawn Small (2016),

Kawaski Trawick (2019), Dounya Zayer (2020), and Jaylin Ryan (2024) underscore the systemic

nature of these violations and the City's enduring failure to protect Black and Latino residents

from police misconduct. Like those incidents, the December 7, 2024, encounter was facilitated

by NYPD supervisors and sanctioned through the silence and inaction of senior policymakers.

       In the aftermath of the incident, Plaintiff THOMAS's mother, retired NYPD Detective

Second Grade Ila Thomas, was denied visitation in an apparent attempt to conceal the extent of

her son's injuries. That afternoon, Plaintiff THOMAS's father, retired Detective First Grade

Harold Thomas, Sr., contacted Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, and

MIGUEL A. IGLESIAS. These officials admitted reviewing body-worn camera footage and

acknowledged that Plaintiffs had committed no criminal offense. Yet they failed to VOID the

arrests, discipline the involved officers, or refer the matter to prosecutorial authorities. Their

willful inaction in the face of direct evidence of civil rights violations constitutes deliberate

indifference and municipal ratification within the meaning of *Monell v. Department of Social

Services*, 436 U.S. 658 (1978).

       The Floyd Monitor's 23rd Report and internal NYPD data further corroborate the

systemic nature of these abuses. In the fourth quarter of 2024, Black residents—only 22.7% of

New York City's population—comprised nearly 30% of all NYPD vehicle stops, while white

residents, over one-third of the population, represented just 17.8%. Supervisors routinely failed

to flag unconstitutional encounters, approved deficient stop reports, and allowed officers with

known histories of misconduct to continue policing vulnerable communities. The City's failure

to curtail racially biased and unconstitutional enforcement practices—as illustrated here—
renders it liable under both federal and local civil rights law.

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1367
and 2201–2202 to secure protection of and to redress deprivation of rights secured by:

       a.      the Civil Rights Act of 1871, 42 U.S.C. § 1983

       b.      New York City Administrative Code § 8-107(17)

2.      Venue is proper in the United States District Court for the Southern District of New
York pursuant to 28 U.S.C. § 1391(b)(1) and (2), because one or more Defendants—including
ERIC L. ADAMS, Mayor of the City of New York; JEFFREY B. MADDREY, Chief of
Department of the NYPD; and MIGUEL A. IGLESIAS, Chief of Internal Affairs—reside and
maintain official offices within this judicial district, and because a substantial part of the events or
omissions giving rise to Plaintiffs' claims occurred here. While the unlawful stop, detention, assault,
and arrests of Plaintiffs occurred in Queens County, within the Eastern District of New York, the
failure to intervene, deliberate indifference, and ratification of unconstitutional conduct by these
high-ranking officials occurred in New York County, within the Southern District of New York.
Their failure to void the arrests, impose discipline, or refer the misconduct for investigation
constitutes a central component of Plaintiffs' Monell and supervisory liability claims, thereby
rendering venue appropriate in this Court.

## PROCEDURAL REQUIREMENTS

3.      Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R.
TRYE, and HAROLD B. THOMAS have filed suit with this Court within the applicable statute of
limitations period.

4.      Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS are not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

5.      On February 9, 2025, Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS jointly filed a single, duly verified Notice of Claim with the Office of the Comptroller of the City of New York. The Notice of Claim was submitted within ninety (90) days of the December 7, 2024 incident in accordance with the requirements of New York General Municipal Law § 50-e, and it set forth each Plaintiff's claims under the New York City Human Rights Law, Administrative Code § 8-107(17). The Notice was signed by all four Plaintiffs. More than thirty (30) days have elapsed since its filing, and the City of New York has neither settled nor adjusted the claim.

## PLAINTIFF

6.      Plaintiff BENJAMIN A. TRYE [the Driver] is employed by the New York State Department of Mental Health as a Mental Health Therapist Aide and resident of Nassau County.

7.      Plaintiff ALISTER ALEXANDER is employed by the New York City Department of Probation as an Assistant Director of Policy and Procedures and resident of Nassau County.

8.      Plaintiff WILFRED R. TRYE is employed by the New York City Department of Probation as a Community Coordinator/Mentor Coordinator. He's a combat veteran honorably discharged from the United States Air Force after five years of service [2010 – 2015] as a Staff Sergeant [E4] and resident of Nassau County.

9.      Plaintiff HAROLD B. THOMAS is employed by the New York City Department of Probation as a Laborer and resident of Nassau County.

**DEFENDANTS**

10.     Defendant THE CITY OF NEW YORK is a municipal corporation organized and existing under the laws of the State of New York. At all relevant times, THE CITY OF NEW YORK, through its agency the New York City Police Department ("NYPD"), was responsible for the formulation, implementation, and enforcement of policies, practices, procedures, and customs used by its police officers, including the individual Defendants named herein. THE CITY OF NEW YORK is liable for the acts and omissions of its employees committed within the scope of their employment pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and the New York City Human Rights Law, Administrative Code § 8-107.

11.     Defendant ERIC L. ADAMS is and was at all relevant times the Mayor of the City of New York. He is sued individually and in his official capacity. As Mayor, Defendant ADAMS was the final policymaker for the City of New York and responsible for the supervision and oversight of the New York City Police Department. Following the events alleged herein, Defendant ADAMS personally reviewed body-worn camera footage of the police misconduct and confirmed that Plaintiffs had committed no criminal offense. Despite possessing actual knowledge of the unlawful conduct by NYPD officers, Defendant ADAMS failed to take any corrective or disciplinary action, failed to void the unlawful arrests, and failed to refer the matter for criminal investigation. His inaction constitutes deliberate indifference and ratification of unconstitutional conduct.

12.     Defendant JEFFREY B. MADDREY was at all relevant times the Chief of Department of the New York City Police Department and the highest-ranking uniformed officer in the Department. He is sued individually and in his official capacity. Defendant MADDREY had direct responsibility for the supervision and discipline of NYPD personnel and for ensuring

constitutional compliance within the Department. After being contacted by retired Detective Harold Thomas, Sr., Defendant MADDREY reviewed the body-worn camera footage depicting the incident and acknowledged that Plaintiffs had committed no crime. Despite this knowledge, he took no action to investigate, discipline, or report the involved officers. Defendant MADDREY's failure to intervene or impose accountability constitutes deliberate indifference to constitutional violations and supports municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

13.     Defendant MIGUEL A. IGLESIAS was at all relevant times the Chief of Internal Affairs for the New York City Police Department. He is sued individually and in his official capacity. Defendant IGLESIAS was responsible for overseeing investigations into misconduct by members of the NYPD. Despite being alerted to and personally reviewing body-worn camera footage of the incident, Defendant IGLESIAS failed to initiate an internal investigation, discipline any officer involved, or report the misconduct to appropriate prosecutorial authorities. His failure to intervene or impose accountability constitutes deliberate indifference to constitutional violations and supports municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

14.     Defendant ANDREW C. DICKSON was at all relevant times a Lieutenant in the New York City Police Department, assigned to the 114th Precinct. He is sued individually and in his official capacity. As a supervisory officer present at the scene on December 7, 2024, Defendant DICKSON had the authority and obligation to supervise subordinates, intervene in unlawful conduct, and ensure compliance with the Constitution and departmental policies.

15.     Despite personally witnessing the brutal and unjustified assault of Plaintiff HAROLD B. THOMAS by subordinate officers, including Defendants BRIAN A. GUZMAN

and ANTHONY N. RICCARDI, Defendant DICKSON took no action to intervene, stop the abuse, or ensure proper medical treatment. He also failed to VOID the unlawful arrests, initiate discipline, or report the misconduct to Internal Affairs. Defendant DICKSON's inaction constitutes deliberate indifference and personal participation in constitutional violations, including unlawful seizure, excessive force, and failure to intervene, and supports supervisory and municipal liability under 42 U.S.C. § 1983.

16.    Defendant EUMIR M. FERRER was at all relevant times a Sergeant in the New York City Police Department, assigned to the 114th Precinct, and has since been promoted to the rank of Lieutenant despite the serious allegations underlying this matter. He is sued individually and in his official capacity. As a supervisory officer on the scene during the events of December 7, 2024, Defendant FERRER had an affirmative duty to supervise subordinate officers, intervene in unlawful conduct, and ensure compliance with constitutional and departmental standards. Despite witnessing the unlawful use of force and participating in efforts to obstruct video documentation of the incident, Defendant FERRER failed to take any steps to prevent or report the constitutional violations committed under his supervision. His conduct and inaction constitute deliberate indifference and support liability under 42 U.S.C. § 1983 and the New York City Human Rights Law.

17.    Despite observing the physical assault of Plaintiff HAROLD B. THOMAS and being in close proximity as it occurred, Defendant FERRER failed to intervene, de-escalate, or prevent the unlawful use of force. He also participated in threatening behavior toward Plaintiff ALISTER ALEXANDER while he was lawfully recording the incident, and attempted to obstruct video evidence by flashing lights into his eyes. Defendant FERRER failed to document the use of force, VOID the unlawful arrests, or notify Internal Affairs. His inaction and conduct

amount to deliberate indifference and constitute violations of the Fourth and Fourteenth Amendments, as well as retaliation in violation of the First Amendment.

18.     Defendant BRIAN A. GUZMAN was at all relevant times a Police Officer employed by the New York City Police Department, assigned to the 114th Precinct. He is sued individually and in his official capacity. On December 7, 2024, Defendant GUZMAN initiated a pretextual traffic stop of Plaintiffs without probable cause or reasonable suspicion, allegedly for a tinted window violation—despite failing to use a tint meter to measure visible light transmission as required by law.

19.     During the encounter, Defendant GUZMAN forcibly removed Plaintiff HAROLD B. THOMAS from the vehicle and punched him repeatedly in the face, head, and body without legal justification. He also handcuffed Plaintiff BENJAMIN A. TRYE excessively tightly, causing physical pain and potential nerve injury. Defendant GUZMAN later issued Plaintiff TRYE a summons under Vehicle and Traffic Law § 375(12-a)(2), despite knowing that no tint measurement was performed. His conduct constituted an unlawful search and seizure, use of excessive force, and racially discriminatory enforcement in violation of the Fourth and Fourteenth Amendments and the New York City Human Rights Law.

20.     Defendant ANTHONY N. RICCARDI was at all relevant times a Police Officer employed by the New York City Police Department, assigned to the 114th Precinct. He is sued individually and in his official capacity. On December 7, 2024, Defendant RICCARDI responded to the scene of the pretextual stop and, without cause or provocation, jumped onto the back of Plaintiff HAROLD B. THOMAS while he was facedown and being restrained by multiple officers.

21.     Defendant RICCARDI struck Plaintiff HAROLD B. THOMAS multiple times in the face, head, back, and body while other officers held him down. He subsequently charged Plaintiff THOMAS with Obstructing Governmental Administration and Resisting Arrest, despite knowing that THOMAS had committed no crime and had not obstructed any police function. Defendant RICCARDI's conduct constituted excessive force, malicious prosecution, and racial profiling in violation of the Fourth and Fourteenth Amendments, and also supports liability under the New York City Human Rights Law.

22.     Defendants JOHN DOES 1 through 20 are as-yet unidentified members of the New York City Police Department who were present at the scene of the December 7, 2024 incident. They are sued individually and in their official capacities. Each of the JOHN DOE defendants was acting under color of law and within the scope of their employment as NYPD officers at the time of the events alleged herein.

23.     The JOHN DOE defendants participated in, assisted with, or failed to intervene in the unlawful stop, detention, assault, arrest, and prosecution of Plaintiffs. Several of these officers physically restrained Plaintiff HAROLD B. THOMAS while others struck him. Others intentionally obstructed Plaintiff ALISTER ALEXANDER's lawful video recording of the incident by shining flashlights in his eyes or turning off their body-worn cameras. The JOHN DOE defendants failed to prevent or report obvious constitutional violations and took no steps to de-escalate the unlawful use of force or void the unlawful arrests. Their conduct and omissions constitute unlawful search and seizure, excessive force, failure to intervene, racial profiling, and retaliation, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution and the New York City Human Rights Law.

## BACKGROUND

**Allegations of Police Brutality, Unlawful Arrest, and
Psychological Trauma Plaintiffs BENJAMIN A. TRYE [DRIVER], ALISTER
ALEXANDER, WILFRED R. TRYE, AND HAROLD B. THOMAS**

24.     On or about December 7, 2024, at or about 0400 hours or 4:00 A.M., in the

County of Queens, Plaintiff BENJAMIN A. TRYE [Driver] legally operated a 2021 Mercedes-

Maybach Sedan S580 KZY 2940 New York Registration with Plaintiffs ALISTER

ALEXANDER, WILFRED R. TRYE and HAROLD B. THOMAS as passengers. The Plaintiffs

recently patronized Starlet's of New York at 49-09 25th Avenue, Woodside, N.Y. 11377.

Plaintiff WILFRED R. TRYE borrowed the vehicle from the registered owner.

25.     Before beginning the trip to return home, the occupied vehicle was temporarily

parked in front of the location because the Plaintiff BENJAMIN A. TRYE [Driver] returned to

retrieve a misplaced personal cellular telephone.

26.     Upon heading northwest on 25th Avenue towards 49th Street, Plaintiff

BENJAMIN A. TRYE [Driver] noticed a dark vehicle in front and one to the rear. At the corner

of 49th Street, at the traffic light, Plaintiff initiated a right turn onto 49th Street, heading

Northeast. Shortly thereafter, Plaintiff noticed the dark vehicle in front, and the rear lights were

illuminated, similar to law enforcement. Plaintiff stopped the car.

27.     An unidentified male approached the driver's side and told him the tints on the

side windows were too dark. The unnamed male [later identified as Defendant BRIAN A.

GUZMAN Shield No.: 22997, Tax Registry No.: 971080] demanded that he leave the vehicle.

The issuing officer [GUZMAN] failed to use a tint meter to measure the vehicle's windows'

visible light transmission (VLT%), rendering the citation unenforceable and unconstitutional

under New York State law.

28.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, allege that the vehicle stop was based on subjective visual estimation, which is not a legally valid basis for enforcement.

29.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, allege that the NYPD routinely enforces window tint laws disproportionately against Black and Latino drivers as a pretext to justify stops, searches, and interrogations.

30.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, allege that the vehicle stop was motivated not by a legitimate safety concern but by racial bias, violating the Plaintiffs' Equal Protection Rights under the 14th Amendment.

31.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, alleged that after the pretextual stop, officers expanded the stop's scope beyond its original purpose, seeking to conduct an unlawful search of the vehicle and its occupants.

32.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, alleged that no reasonable suspicion existed to justify the search, making any evidence obtained inadmissible in court.

33.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, alleged that the NYPD has a well-documented history of using minor traffic infractions, such as window tint violations, to stop minority drivers disproportionately.

34.    The Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS, allege that the department fails to train, supervise, and discipline officers to prevent racial profiling, making the City of New York liable for constitutional violations under Monell v. Department of Social Services.

35.    Plaintiff BENJAMIN A. TRYE [Driver] alleged that he noticed more police vehicles with personnel arrive.

36.    Plaintiff BENJAMIN A. TRYE [Driver] alleges that he began to fear for his and the other Plaintiffs' lives because they violated no laws; they were in a darkened, isolated industrial area with no witnesses. Moreover, the police actions exacerbated his PTSD and the knowledge that Plaintiff THOMAS was a previous victim of racial profiling and police brutality along with himself and other Black males.

37.    Plaintiff BENJAMIN A. TRYE [Driver] alleges that he exited the vehicle and was directed to walk towards the trunk area.

38.    Plaintiff ALISTER ALEXANDER alleges that another male officer, later identified as Defendant EUMIR M. FERRER Shield No.: 2512, Tax Registry No.: 943232, approached the passenger side and ordered him to "Get the fuck out of the car" or words to that effect. Plaintiff ALEXANDER did not know what was going on.

39.    Plaintiff HAROLD B. THOMAS alleges that he showed EUMIR M. FERRER several Police Benevolent Association of the City of New York cards, and he tossed them.

40.    Meanwhile, Plaintiff ALISTER ALEXANDER hears a commotion and sees Plaintiff HAROLD B. THOMAS falling out of the car. He runs toward Plaintiff THOMAS and records the events with his cellular telephone device.

41.    Plaintiff ALISTER ALEXANDER alleges that he began to fear for his and the other Plaintiffs' lives because they violated no laws; they were in a darkened, isolated industrial area with no witnesses. Moreover, the police actions exacerbated his PTSD and the knowledge that Plaintiff HAROLD B. THOMAS was a previous victim of racial profiling [he witnessed the police assault] and police brutality along with himself and other Black males.

42.    Plaintiff BENJAMIN A. TRYE [Driver] alleges that as he walked near the rear driver's side door, he heard a commotion and Plaintiff HAROLD B. THOMAS'S voice. When he looked over, he could see Plaintiff THOMAS fall out of the vehicle onto the ground while facedown several officers pounced on him.

43.    Plaintiffs BENJAMIN A. TRYE [Driver], ALISTER ALEXANDER, and WILFRED R. TRYE noticed a male officer, later identified as Defendant BRIAN A. GUZMAN Shield No.: 22997, Tax Registry No.: 971080, on the ground facing towards Plaintiff HAROLD B. THOMAS, punching him in the face, head, and about the body.

44.    Meanwhile, another male officer, later identified as Defendant ANTHONY N. RICCARDI Shield No.: 13105, Tax Registry No.: 970134, jumped onto Plaintiff HAROLD B. THOMAS's back and punched several times in the face, head and about the body, including the back. Other unidentified officers were on the ground restraining Plaintiff THOMAS while Defendants EUMIR M. FERRER and ANDREW C. DICKSON, Tax Registry No.: 943170, stood idly by.

45.    From the Plaintiffs BENJAMIN A. TRYE [Driver], ALISTER ALEXANDER, and WILFRED R. TRYE's perspective, there were more than twenty [20] police officers present. More importantly, no one intervened in the brutal assault of Plaintiff HAROLD B. THOMAS.

46.     Plaintiff WILFRED R. TRYE alleges that he feared fear for his and the other Plaintiffs' lives because they violated no laws; they were in a darkened, isolated industrial area with no witnesses. Moreover, the police actions exacerbated his PTSD and the knowledge that Plaintiff HAROLD B. THOMAS was a previous victim of racial profiling and police brutality along with himself and other Black males.

47.     Plaintiff ALISTER ALEXANDER alleges that several officers, including Defendant EUMIR M. FERRER, flashed flashlights in his eyes and tried to block the camera's view of the brutal assault.

48.     Plaintiff ALISTER ALEXANDER alleges that several officers turned off their body-worn cameras.

49.     Plaintiff ALISTER ALEXANDER alleges that he yelled several times, "Why are you punching him?" Defendant EUMIR M. FERRER instructed Plaintiff ALEXANDER to back up while flashing a flashlight into his eyes. Meanwhile, Plaintiff ALEXANDER was recording the police as his lawful right as he was not physically interfering but recording the event.

50.     Plaintiff ALISTER ALEXANDER alleges that Defendant ANDREW C. DICKSON denied that the officers punched Plaintiff HAROLD B. THOMAS.

51.     Plaintiffs ALISTER ALEXANDER and WILFRED R. TRYE observed Plaintiff BENJAMIN A. TRYE [Driver] being handcuffed for unknown charges.

52.     Plaintiffs ALISTER ALEXANDER and WILFRED R. TRYE observed Plaintiff HAROLD B. THOMAS being handcuffed for unknown charges.

### Allegations of Police Brutality, Unlawful Arrest, and Psychological Trauma Plaintiff HAROLD B. THOMAS

53.     Plaintiff HAROLD B. THOMAS alleges that he sustained substantial pain in his face, hands, head, back, and body because of Defendants BRIAN A. GUZMAN and ANTHONY N. RICCARDI's brutal assault.

54.     Plaintiff THOMAS alleges that Defendant RICCARDI ultimately charged him with Obstructing Governmental Administration and Resisting Arrest, although he violated no laws and did not physically obstruct the police's actions.

55.     Plaintiff THOMAS alleges that Defendants ANDREW C. DICKSON, EUMIR M. FERRER, and the unidentified Desk Officer failed to supervise police personnel and VOID the unlawful arrest of Defendant RICCARDI, consistent with department policy and the law.

56.     Plaintiff THOMAS alleges he was unlawfully held inside the holding cell of 114th Precinct with Plaintiff BENJAMIN A. TRYE [Driver] for approximately 7.5 hours and Queens Central Booking for approximately 10 hours.

57.     Plaintiff THOMAS alleges that later that night, December 7, 2024, he appeared before the Honorable Edward Daniel Criminal Court of the City of New York, Part AR 3, Docket No.: CR-042168-24QN and the Arraignment Court granted a Criminal Procedure Law (CPL) § 170.55 - Adjournment in Contemplation of Dismissal without his permission.

### Allegations of Police Brutality, Unlawful Arrest, and Psychological Trauma Plaintiff BENJAMIN A. TRYE [DRIVER]

58.     Plaintiff BENJAMIN A. TRYE [Driver] alleges that he sustained substantial pain in his hands and possible nerve damage because of an unidentified police officer handcuffing him too tight.

59.     Plaintiff BENJAMIN A. TRYE [Driver] alleges he was unlawfully held inside the 114th Precinct for several hours in the holding cell with Plaintiff HAROLD B. THOMAS.

60.    Plaintiff BENJAMIN A. TRYE [Driver] alleges that Defendant BRIAN A. GUZMAN ultimately charged him with violating New York Vehicle and Traffic Law (VTL) § 375(12-a)(2), regulations govern window tinting on motor vehicles, specifying the allowable levels of tint and enforcement procedures. However, GUZMAN failed to use a tint meter to measure the visible light transmission (VLT%) of the vehicle's windows, rendering the citation unenforceable and unconstitutional under New York State law.

## POST ARREST

61.    Plaintiff HAROLD B. THOMAS alleges that on December 7, 2024, in the morning, his mother, retired NYPD Detective Second Grade Ila Thomas [Quality Assurance], was denied visitation in a bid to cover up the brutal police assault.

62.    Plaintiff HAROLD B. THOMAS alleges that later that afternoon, his father, retired NYPD Detective First Grade Harold Thomas Sr. [Joint Terrorism Task Force], had conversations with Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, and MIGUEL A. IGLESIAS. They admitted to viewing several body-worn cameras of the police officers, including Defendant ANTHONY N. RICCARDI, and revealed that none of the Plaintiffs had violated any laws. Yet, these police officers were not arrested or referred the matter to the Office of the District Attorney County of Queens – the Public Corruption Bureau or the United States Attorney's Office for the Eastern District of New York.

## OFFICER PROFILES

**Summary of Defendant ANDREW C. DICKSON's History of Misconduct and Supervisory Failure**

63.    Defendant ANDREW C. DICKSON, who is currently assigned to the 114th Precinct, has a documented history of allegations of excessive force, misconduct, and failure to intervene in civil rights violations. His career includes prior service at the 111th Precinct,

Midtown North Precinct, 78th Precinct, and 76th Precinct, with his tenure in the NYPD

beginning in January 2007.

64.    Defendant ANDREW C. DICKSON has faced three official complaints, including

four separate allegations of misconduct, with none substantiated, despite multiple complainants

being Black or Hispanic males. A September 2024 complaint accused him of using physical

force against a Hispanic male, which remains pending litigation. Similarly, an August 2019

complaint alleged physical force against a Black male is also still unresolved due to pending

litigation. A January 2014 complaint involved the use of physical force and an unlawful stop

against a Black male, but the case was closed after the victim became unavailable, and the

second allegation was unsubstantiated.

65.    Furthermore, Defendant ANDREW C. DICKSON has been named in two federal

lawsuits alleging excessive force. In G., D., et al. v. City of New York et al., filed in April 2021,

plaintiffs alleged that multiple NYPD officers, including DICKSON, engaged in excessive force,

wrongful detainment, and racial profiling of teenagers aged 13-15 during a stop on Halloween

night in 2018. Officers allegedly pointed firearms at the children, tackled them, and frisked them

without probable cause. The second lawsuit, Ward v. City of New York, et al., filed in August

2020, alleged that DICKSON and other officers engaged in a violent assault, including kicking,

choking, and stomping the plaintiff without justification. The victim, Derrick Ward, was

subsequently detained and taken to the hospital for treatment before being released.

66.    Defendant ANDREW C. DICKSON'S pattern of misconduct, excessive force

allegations, and involvement in civil rights lawsuits strongly support the claim that NYPD

supervisors, including DICKSON, have engaged in or enabled unconstitutional policing

practices. His presence at the 114th Precinct, combined with his history of alleged racial bias and force against minority individuals, reinforces claims of Monell liability for supervisory failures.

**Summary of Defendant EUMIR M. FERRER's History of Misconduct and Supervisory Failure**

67.     Defendant EUMIR M. FERRER, formerly assigned at the 114th Precinct, has an extensive history of substantiated allegations of excessive force, abuse of authority, and misconduct. His tenure in the NYPD began in January 2007, and he has previously served at Police Service Area 1 and the 44th Precinct.

68.     Defendant EUMIR M. FERRER has faced six official complaints, totaling 22 allegations of misconduct, six of which have been substantiated. These include two cases of excessive physical force, two cases of abuse of authority through unlawful questioning, one case of an unlawful frisk, and one case of issuing a retaliatory summons. Despite these findings, FERRER has faced only minor disciplinary actions, including formalized training and command discipline, demonstrating a failure by the NYPD to hold him accountable for misconduct.

69.     Defendant EUMIR M. FERRER has also been named in two lawsuits alleging excessive force and false arrests. In Mercado v. City of New York, et al., filed in January 2022, Ferrer and other officers allegedly pulled a man from his tow truck, assaulted him, and detained him for several hours on false charges. In Stokes v. City of New York, et al., filed in February 2016, FERRER was named in a lawsuit alleging unlawful stops and arrests of the same individual on multiple occasions, leading to wrongful charges that were later dismissed.

70.     The pattern of excessive force complaints, racial disparities in enforcement, and failure to impose meaningful discipline strongly supports the argument that Defendant EUMIR M. FERRER engaged in unconstitutional policing practices and contributed to a culture of misconduct at the 114th Precinct. His history of targeting minority individuals and using

excessive force aligns with the broader systemic issues of racial profiling and unconstitutional

stops within the NYPD, reinforcing claims of Monell liability for supervisory failures.

**Summary of Defendant BRIAN A. GUZMAN's History of Misconduct**

71.    Defendant BRIAN A. GUZMAN, previously assigned to the 114th Precinct and

currently serving at Police Service Area 9, has a record of multiple complaints and allegations of

excessive force. His career in the NYPD began in February 2021, and his history includes two

known lawsuits and multiple unresolved misconduct complaints.

72.    Defendant BRIAN A. GUZMAN has faced four official complaints, totaling nine

allegations of misconduct, none of which were substantiated. A September 2024 complaint

against GUZMAN involved an allegation of physical force against a Hispanic male, which

remains pending litigation. A May 2023 complaint included an allegation of use of a vehicle as

force against a Black male, but the complainant later became unavailable. Another October 2024

complaint involved multiple allegations of physical force and threats of arrest, but all were

dismissed due to the complainant's uncooperativeness.

73.    Defendant BRIAN A. GUZMAN has also been named in two lawsuits, with a

total of $45,000 in settlements. In Peguero v. City of New York, et al., filed in February 2021,

Guzman was named as a defendant in a case that resulted in a $45,000 settlement for excessive

force and civil rights violations. Another lawsuit, Vazquez v. City of New York, et al., filed the

same day, was administratively closed, raising further concerns about Guzman's policing

practices.

74.    Despite the multiple allegations of misconduct and the significant lawsuit

settlement, no substantial disciplinary action has been taken against Defendant BRIAN A.

GUZMAN. The failure of the NYPD to investigate and adequately discipline officers like

GUZMAN for repeated use-of-force complaints reinforces claims of Monell liability. His pattern of excessive force, lack of accountability, and presence at the 114th Precinct during critical events in this case further substantiate allegations of systemic misconduct within the NYPD.

**Summary of Defendant ANTHONY N. RICCARDI's History of Misconduct**

75.      Defendant ANTHONY N. RICCARDI, who was previously assigned to the 114th Precinct and currently serves in the Equipment Section, has a record of multiple allegations of misconduct, including excessive force and abuse of authority. His career in the NYPD began in November 2020, and his disciplinary history reflects a pattern of civil rights violations.

76.      Defendant ANTHONY N. RICCARDI has faced five official complaints, totaling 13 misconduct allegations, with one substantiated. His September 2024 complaint involved an allegation of physical force against a Hispanic male, which remains pending litigation. In December 2023, he was accused of refusing to provide his shield number, but the case was closed due to budget cuts under the OMB PEG Directive. His January 2023 complaint included allegations of restricted breathing and excessive force against a white male, both of which remain pending litigation.

77.      One of Defendant ANTHONY N. RICCARDI's notably substantiated allegations involved his failure to provide a Right to Know Act (RTKA) card, an NYPD transparency requirement, during a May 2023 complaint. The CCRB determined that RICCARDI violated departmental policy, but no penalty was imposed. Additionally, multiple allegations of discourtesy, offensive language, and vehicle stop-related abuses were ruled as being within NYPD guidelines, demonstrating how NYPD internal reviews often protect officers from accountability.

78.    Defendant ANTHONY N. RICCARDI's history of excessive force, failure to follow NYPD transparency policies, and repeated involvement in civil rights complaints strongly support the claim that he engaged in unconstitutional policing. His presence at the 114th Precinct, where he was accused of excessive force, aligns with documented patterns of racial profiling and unconstitutional stops, reinforcing Monell liability claims against the NYPD for failure to supervise and discipline its officers.

## NYPD STATISTICAL DATA

To assess potential disparities in NYPD vehicle stops during the fourth quarter of 2024, we can compare the racial distribution of these stops to New York City's overall demographic composition.

**Racial Composition of NYPD Vehicle Stops (Q4 2024):**

- Black: 29.8%
- Hispanic: 29%
- White: 17.8%
- Asian/Pacific Islander: 12.3%
- Other/Unknown: 11.1%

**New York City Demographics:**

- White: 35.9%
- Black: 22.7%
- Hispanic or Latino: 28.4%
- Asian: 14.6%

*Source: U.S. Census Bureau QuickFacts for New York City*

**Analysis:**

- **Black Residents:** Although comprising 22.7% of the city's population, Black individuals accounted for 29.8% of vehicle stops, indicating a potential overrepresentation.
- **Hispanic Residents:** Hispanic or Latino individuals comprise 28.4% of the population and represent 29% of vehicle stops, suggesting a proportionate representation.
- **White Residents:** Although white individuals constitute 35.9% of the population, they accounted for only 17.8% of vehicle stops, indicating a potential underrepresentation.
- **Asian Residents:** Asians represent 14.6% of the population and 12.3% of vehicle stops, suggesting a slight underrepresentation.

79.    The data suggests that Black residents are stopped at a higher rate relative to their

share of the population, while White residents are stopped at a lower rate. These disparities may

indicate potential biases in traffic enforcement practices. Further analysis, considering factors

such as driving patterns and law enforcement deployment, would be necessary to draw definitive

conclusions.

**FINDINGS FROM THE FLOYD MONITOR'S 23RD REPORT**

The Floyd Monitor's 23rd Report, which assesses NYPD's compliance with court-ordered reforms following the landmark Floyd v. City of New York case, provides compelling evidence of systemic constitutional violations by the NYPD. The report's findings further substantiate the legal claims asserted in this matter, particularly regarding racial profiling, unconstitutional stops, and failures in NYPD supervision.

**A.  Widespread Unconstitutional Stops and Searches**
- The report found that only 75% of Neighborhood Safety Teams (NSTs) stops were lawful, compared to 92% of regular patrol officers.
- Only 58% of frisks and 54% of searches conducted by NST officers were lawful, meaning that nearly half of all frisks and searches lacked legal justification.
- NST officers disproportionately targeted Black and Latino individuals while engaging in self-initiated stops without reasonable suspicion.

**B.  Systemic Racial Disparities in Enforcement**
- 95% of stop reports and 93% of body-worn camera (BWC) footage involved Black or Hispanic individuals, reinforcing a pattern of racial profiling.
- Despite these apparent racial disparities, NYPD supervisors failed to address or rectify the department's unconstitutional practices.
- Supervisors approved 99.1% of stop reports as "lawful," even when independent audits found many unconstitutional.

**C.  Supervisory Failures and Institutional Negligence**
- Supervisors routinely failed to identify racial profiling or unconstitutional stops.
- NYPD officers engaged in unlawful self-initiated stops 70% of the time, indicating a lack of proper oversight.
- The report found that NYPD leadership had systemically ignored evidence of unconstitutional conduct, permitting ongoing civil rights violations.

80.    The findings from the Floyd Monitor's 23rd Report, in conjunction with statistical

analysis of NYPD vehicle stops, provide compelling evidence of systemic racial profiling,

unconstitutional stops, and supervisory failures within the NYPD. This evidence directly supports the legal claims asserted in this case, reinforcing constitutional violations and the City of New York's liability under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, Monell liability doctrine, and the NYC Human Rights Law (Administrative Code § 8-107).

81.    The Floyd Monitor's findings confirm that NYPD officers routinely conduct stops without reasonable suspicion, disproportionately targeting Black and Latino individuals, which constitutes a clear violation of the Fourth Amendment's protections against unlawful searches and seizures.

82.    The systemic racial disparities in NYPD traffic stops are not coincidental but reflective of a pattern of unconstitutional and discriminatory policing practices, violating the Equal Protection Clause of the Fourteenth Amendment.

83.    The events described above occurred in a broader context of racially discriminatory and unconstitutional policing by the NYPD, as evidenced by numerous prior civil rights cases involving similarly situated victims, including Eric Garner, Delrawn Small, Kawaski Trawick, Dounya Zayer, and Jaylin Ryan.

84.    The failure of NYPD supervisors and leadership to correct or address these unconstitutional practices demonstrates a deliberate indifference to civil rights violations, meeting the legal standard for municipal liability under Monell v. Department of Social Services.

85.    The NYPD's documented failure to intervene, correct, or discipline officers engaging in racial profiling further substantiates violations of New York City Human Rights Law (Administrative Code § 8-107), which prohibits discriminatory policing.

## VIOLATIONS AND CLAIMS ALLEGED

**COUNT I**
**VIOLATION OF THE FOURTH AMENDMENT –**
**UNLAWFUL SEARCH AND SEIZURE**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW**
**C. DICKSON, EUMIR M. FERRER, AND JOHN DOES 1–20**

86.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R.

TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as

if fully set forth herein.

87.    The Fourth Amendment to the United States Constitution, as incorporated against

the states through the Fourteenth Amendment, protects individuals from unreasonable searches

and seizures by law enforcement officials.

88.    On December 7, 2024, Plaintiffs BENJAMIN A. TRYE, ALISTER

ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS were subjected to a traffic

stop by Defendant BRIAN A. GUZMAN, without probable cause or reasonable suspicion of any

criminal or traffic violation. No tint meter was used to support the alleged violation of Vehicle

and Traffic Law § 375(12-a)(2).

89.    The stop was conducted as a pretext to investigate Plaintiffs BENJAMIN A.

TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS based on

their race and presence in a predominantly industrial area, not on any articulable suspicion or

lawful basis.

90.    During the stop, each Plaintiff was unlawfully detained and seized. Plaintiff

BENJAMIN A. TRYE was ordered out of the vehicle and handcuffed excessively tightly,

causing physical injury. Plaintiffs ALISTER ALEXANDER and WILFRED R. TRYE were

removed from the vehicle and detained without justification. Plaintiff HAROLD B. THOMAS

was forcibly removed from the vehicle, physically restrained, and arrested without probable cause.

91.     Upon information and belief, according to NYPD policy, officers encountering a suspected tint violation must issue a universal summons in lieu of arrest. Defendant BRIAN A. GUZMAN's decision to arrest Plaintiff BENJAMIN A. TRYE, and only after the fact issue a non-criminal DMV ticket without conducting a tint meter reading, constitutes an unreasonable seizure unsupported by probable cause or departmental guidelines, and evidences pretextual and discriminatory enforcement.

92.     Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, and JOHN DOES 1–20 directly participated in these unlawful seizures. Defendants ANDREW C. DICKSON and EUMIR M. FERRER, who held supervisory authority on the scene, had both the opportunity and legal duty to intervene, but failed to stop or remedy the unconstitutional conduct, thereby making themselves liable under 42 U.S.C. § 1983.

93.     The actions and omissions of Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, and JOHN DOES 1–20 were intentional, malicious, and taken under color of law within the scope of their employment with the New York City Police Department.

94.     As a direct and proximate result of the foregoing conduct, Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS suffered violations of their constitutional rights, physical pain, emotional distress, unlawful detention, and other injuries compensable at law.

95.     Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS seek judgment against Defendants BRIAN A. GUZMAN,

ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, and JOHN DOES

1–20 for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42

U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE FOURTH AMENDMENT –**
**EXCESSIVE FORCE**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW**
**C. DICKSON, EUMIR M. FERRER, AND JOHN DOES 1–20**

96.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R.

TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as

if fully set forth herein.

97.    The Fourth Amendment to the United States Constitution, as incorporated through

the Fourteenth Amendment, protects individuals from the use of excessive and unreasonable

force by law enforcement officers.

98.    On December 7, 2024, Plaintiff HAROLD B. THOMAS was forcibly removed

from a vehicle without cause and violently assaulted by Defendant BRIAN A. GUZMAN and

Defendant ANTHONY N. RICCARDI, who punched him repeatedly in the face, head, back, and

body while he was facedown and restrained by other officers.

99.    Other unidentified officers, JOHN DOES 1–20, assisted in forcibly restraining

Plaintiff HAROLD B. THOMAS on the ground during the assault and failed to intervene or stop

the unjustified use of force.

100.    Defendant BENJAMIN A. TRYE was also subjected to excessive force when he

was handcuffed in an unnecessarily tight manner by one or more of the Defendants, causing

substantial pain and potential nerve damage.

101.    Defendants ANDREW C. DICKSON and EUMIR M. FERRER, who were supervisory officers present at the scene, had the opportunity and duty to prevent or halt the use of excessive force against Plaintiffs HAROLD B. THOMAS and BENJAMIN A. TRYE, but failed to do so. Their deliberate indifference and failure to intervene support individual liability under 42 U.S.C. § 1983.

102.    The force used against Plaintiffs HAROLD B. THOMAS and BENJAMIN A. TRYE was excessive, objectively unreasonable under the circumstances, and was applied without lawful justification or necessity.

103.    The actions and omissions of Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, and JOHN DOES 1–20 was intentional, malicious, and committed under color of law within the scope of their employment by the New York City Police Department.

104.    As a direct and proximate result of the use of excessive force, Plaintiffs HAROLD B. THOMAS and BENJAMIN A. TRYE suffered physical injury, emotional distress, psychological trauma, and other damages compensable at law.

105.    Plaintiffs HAROLD B. THOMAS and BENJAMIN A. TRYE seek judgment against Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, and JOHN DOES 1–20 for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF THE FIRST AMENDMENT –**
**RETALIATION FOR PROTECTED ACTIVITY**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS EUMIR M. FERRER AND JOHN DOES 1–20**

106.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as if fully set forth herein.

107.    The First Amendment to the United States Constitution guarantees individuals the right to record public officials, including law enforcement officers, in public spaces as a form of expression, public oversight, and protected activity.

108.    On December 7, 2024, Plaintiff ALISTER ALEXANDER lawfully used his personal cell phone to record the actions of New York City Police Department officers as they physically assaulted Plaintiff HAROLD B. THOMAS.

109.    Plaintiff ALISTER ALEXANDER did not interfere with police operations and stood at a lawful distance while documenting the incident, which is protected speech and expressive conduct under the First Amendment.

110.    In response, Defendant EUMIR M. FERRER and one or more JOHN DOE officers attempted to prevent Plaintiff ALISTER ALEXANDER from recording by shining flashlights into his eyes, obstructing his view, and issuing verbal threats and orders intended to intimidate him into ceasing his recording.

111.    At least one officer turned off his body-worn camera, further demonstrating an intent to suppress documentation of the police misconduct occurring on the scene.

112.    The conduct of Defendants EUMIR M. FERRER and JOHN DOES 1–20 was motivated by Plaintiff ALISTER ALEXANDER's exercise of his First Amendment rights and was undertaken to retaliate against him for attempting to document unlawful police conduct.

113.    The retaliatory actions by Defendants were not justified by any legitimate law enforcement need and were intended to chill or suppress Plaintiff ALISTER ALEXANDER's constitutionally protected activity.

114.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff ALISTER ALEXANDER suffered emotional distress, intimidation, humiliation, and deprivation of his constitutional rights.

115.    Plaintiff ALISTER ALEXANDER seeks judgment against Defendants EUMIR M. FERRER and JOHN DOES 1–20 for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## COUNT IV
### VIOLATION OF THE FOURTEENTH AMENDMENT – EQUAL PROTECTION: RACIAL PROFILING AND SUPERVISORY RATIFICATION (42 U.S.C. § 1983 Arlington Heights Theory) AGAINST DEFENDANTS BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, AND JOHN DOES 1–20

116.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as if fully set forth herein.

117.    The Equal Protection Clause of the Fourteenth Amendment prohibits law enforcement officers and government officials from engaging in or ratifying racially discriminatory policing, including selective enforcement and targeting based on race or ethnicity.

118.    On December 7, 2024, Plaintiffs—all Black men—were subjected to a traffic stop by Defendant BRIAN A. GUZMAN, allegedly based on tinted windows. No tint meter was used.

The stop was initiated in a predominantly industrial area, and was pretextual, unlawful, and racially motivated.

119.    Defendant GUZMAN escalated the stop into a custodial arrest of Plaintiff BENJAMIN A. TRYE, and issued a post hoc DMV summons after the fact to justify the encounter. Defendant ANTHONY N. RICCARDI falsely charged Plaintiff HAROLD B. THOMAS with obstruction and resisting arrest, although he was restrained and posed no threat.

120.    These charges were fabricated to mask the unlawful and racially discriminatory nature of the stop and subsequent use of force. The conduct was inconsistent with NYPD policies and practices applied to similarly situated white individuals.

121.    Supervisory Defendants ANDREW C. DICKSON and EUMIR M. FERRER were present on the scene and failed to intervene or correct the racially motivated escalation. They permitted false narratives to proceed and obstructed Plaintiff ALISTER ALEXANDER's video recording of the incident.

122.    In the hours following the incident, Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, and MIGUEL A. IGLESIAS were personally informed of the unlawful arrest, assault, and fabricated charges. They reviewed body-worn camera footage and admitted that no crimes had been committed. Despite this, they failed to initiate discipline, VOID the arrests, or refer the incident for prosecution—thereby ratifying racially discriminatory conduct.

123.    These Defendants had the authority, ability, and legal obligation to correct the constitutional violations, but instead acted with deliberate indifference, perpetuating the racial bias that underpinned the stop and arrests.

124.    The racially selective enforcement at issue in this case is consistent with a broader pattern of NYPD conduct documented in oversight reports, including the Floyd Monitor's 23rd

Report and Q4 2024 NYPD data. These reports show disproportionate targeting of Black drivers, especially by Neighborhood Safety Teams, and a widespread failure by supervisors to address racial profiling.

125.    The motivation for the traffic stops and subsequent arrests was substantially influenced by Plaintiffs' race and presence in a high-policing zone. Direct and circumstantial evidence—including statistical disparities, officer histories, the absence of probable cause, and post-incident inaction—support an inference of discriminatory purpose under *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977).

126.    As a direct and proximate result of the racially discriminatory actions and omissions of Defendants, Plaintiffs suffered violations of their constitutional rights under the Equal Protection Clause, along with emotional distress, humiliation, reputational harm, and other compensable injuries.

127.    Plaintiffs seek judgment against Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, AND JOHN DOES 1–20 for compensatory damages, punitive damages, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT V**
**FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH**
**AND FOURTEENTH AMENDMENTS**
**(42 U.S.C. § 1983)**
**AGAINST DEFENDANTS ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L.**
**ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, and JOHN DOES 1–20**

128.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as if fully set forth herein.

129.    Law enforcement officers and supervisory officials have a clearly established constitutional duty under the Fourth and Fourteenth Amendments to intervene when they observe or are informed of another officer engaging in unlawful force, unreasonable searches and seizures, or racially discriminatory policing, particularly where they have the authority to prevent, mitigate, or rectify ongoing constitutional violations.

130.    On December 7, 2024, Plaintiffs were subjected to a racially motivated, pretextual stop by Defendant BRIAN A. GUZMAN, who failed to follow NYPD protocol requiring the issuance of a universal summons for suspected tint violations. Instead, Defendant GUZMAN unlawfully escalated the encounter into a custodial arrest without probable cause or use of a tint meter, in violation of state law, department policy, and clearly established constitutional principles.

131.    During the stop, Plaintiff HAROLD B. THOMAS was forcibly removed from the vehicle, pinned to the ground, and repeatedly punched by Defendants BRIAN A. GUZMAN and ANTHONY N. RICCARDI while restrained by multiple officers. Simultaneously, Plaintiff BENJAMIN A. TRYE was subjected to excessive force through overtightened handcuffs, causing substantial physical pain and potential nerve damage.

132.    Defendants ANDREW C. DICKSON and EUMIR M. FERRER, each holding supervisory authority at the scene, and Defendants JOHN DOES 1–20, personally observed or were in close proximity to the use of excessive force, the racially motivated nature of the stop, and the unlawful escalation of police conduct. Despite having the opportunity and legal duty to intervene, they willfully failed to prevent, stop, or report these constitutional violations.

133.    In the hours and days following the incident, Defendants ERIC L. ADAMS (Mayor of the City of New York), JEFFREY B. MADDREY (Chief of Department, NYPD), and

MIGUEL A. IGLESIAS (Chief of Internal Affairs, NYPD) were personally informed of the assault and arrest of Plaintiffs, reviewed multiple body-worn camera recordings, and acknowledged that none of the Plaintiffs had committed a criminal offense.

134.    Despite having actual knowledge of the unlawful arrests, fabricated charges, and unconstitutional use of force, Defendants ADAMS, MADDREY, and IGLESIAS failed to initiate any disciplinary proceedings, VOID the arrests, refer the matter for criminal investigation, or take corrective administrative action. Their failure to act constitutes deliberate indifference, supervisory ratification, and an ongoing violation of Plaintiffs' constitutional rights.

135.    The failure of Defendants DICKSON, FERRER, ADAMS, MADDREY, IGLESIAS, and JOHN DOES 1–20 to intervene and correct the unlawful stop, racially discriminatory treatment, excessive force, and fabricated charges allowed the constitutional violations to continue unaddressed, resulting in prolonged detention, emotional trauma, reputational harm, and physical injury to Plaintiffs.

136.    As a direct and proximate result of these Defendants' failure to intervene, Plaintiffs BENJAMIN A. TRYE, HAROLD B. THOMAS, ALISTER ALEXANDER, and WILFRED R. TRYE suffered violations of their constitutional rights under the Fourth and Fourteenth Amendments, as well as other compensable injuries.

137.    Plaintiffs seek judgment against Defendants ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, and JOHN DOES 1–20 for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

**COUNT VI**
**MUNICIPAL LIABILITY – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE**
**(42 U.S.C. § 1983 – MONELL CLAIM)**
**AGAINST DEFENDANT THE CITY OF NEW YORK**

138.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R.

TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as

if fully set forth herein.

139.    Defendant THE CITY OF NEW YORK, through its agency the New York City

Police Department (NYPD), maintained longstanding customs, policies, and practices that

directly and proximately caused the constitutional violations inflicted upon Plaintiffs.

140.    These policies and practices included, but were not limited to: (a) racially

discriminatory vehicle enforcement targeting Black and Latino motorists; (b) reliance on

pretextual stops lacking probable cause or articulable suspicion; (c) the routine use of excessive

force, especially during low-level enforcement interactions with Black individuals; (d)

inadequate training on constitutional limitations relating to vehicle stops, arrests, use of force,

and retaliation against recording bystanders; (e) systemic failures to discipline or remove officers

with repeated use-of-force and misconduct complaints; (f) tolerance of fabricated charges and

retroactive justifications for unlawful conduct; and (g) a culture of non-intervention and silence

by supervisory and command-level officials during and after constitutional violations.

141.    The December 7, 2024 incident occurred within this broader unconstitutional

framework and mirrored well-documented systemic failures already identified in third-party

oversight reports and City data. These practices mirror prior NYPD encounters resulting in civil

rights violations, including the deaths or injuries of Eric Garner (2014), Delrawn Small (2016),

Kawaski Trawick (2019), Dounya Zayer (2020), and the recent assault of Jaylin Ryan (2024). In

each case, excessive force or retaliatory policing occurred under conditions of racialized enforcement and supervisor inaction.

142.    According to the Floyd Monitor's 23rd Report, NYPD Neighborhood Safety Teams (NSTs) conducted stops in which: 95% of persons stopped were Black or Latino; Only 75% of those stops were lawful; Just 54% of searches were legally justified;

143.    Supervisors nonetheless approved nearly all stop reports, evidencing institutionalized disregard for constitutional protections.

144.    Quarterly NYPD data from Q4 2024 further underscores systemic racial disparities: Black residents comprised only 22.7% of the City's population but accounted for 29.8% of all vehicle stops; white residents made up 35.9% of the population but just 17.8% of stops.

145.    Despite this pattern, the NYPD failed to discipline officers known to engage in unconstitutional conduct.

146.    Defendant BRIAN A. GUZMAN had open CCRB complaints and a civil rights settlement.

147.    Defendant ANTHONY N. RICCARDI had a substantiated transparency violation and multiple open misconduct allegations.

148.    Defendant EUMIR M. FERRER had 22 allegations, including substantiated excessive force claims.

149.    Defendant ANDREW C. DICKSON had multiple CCRB and litigation matters— none of which resulted in meaningful discipline.

150.    Despite these records, the City continued to assign these officers to frontline enforcement commands like the 114th Precinct. Some, like Defendant EUMIR M. FERRER, were even promoted, demonstrating tolerance or reward for problematic conduct.

151.    Most significantly, Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS—each a final policymaker or supervisory official—were personally informed of the unlawful December 7, 2024 incident, reviewed body-worn camera footage, and admitted that Plaintiffs had committed no crime. Despite this knowledge, they failed to initiate discipline, VOID unlawful arrests, refer the matter for prosecution, or impose administrative remedies.

152.    Their deliberate failure to intervene after acquiring actual knowledge of clear constitutional violations constitutes ratification of misconduct at the highest levels and is independently sufficient to establish municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

153.    These institutional and supervisory failures were the moving force behind Plaintiffs' unlawful stop, detention, excessive force, fabricated charges, and racial profiling.

154.    As a direct and proximate result of Defendant THE CITY OF NEW YORK's unconstitutional customs, practices, and supervisory failures, Plaintiffs suffered violations of their Fourth and Fourteenth Amendment rights, emotional distress, reputational harm, physical injuries, and deprivation of liberty, all compensable under 42 U.S.C. § 1983.

155.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS seek judgment against Defendant THE CITY OF NEW YORK for compensatory damages, punitive damages (where available), attorneys' fees and costs

pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## COUNT VII
## FABRICATION OF EVIDENCE IN VIOLATION OF
## THE FOURTEENTH AMENDMENT
## (42 U.S.C. § 1983)
## AGAINST DEFENDANTS BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, AND JOHN DOES 1–20

156.    Plaintiffs BENJAMIN A. TRYE and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as if fully set forth herein.

157.    The Due Process Clause of the Fourteenth Amendment prohibits government officials from knowingly fabricating evidence and using it to cause or justify a deprivation of liberty.

**A. Fabrication by Defendant BRIAN A. GUZMAN Against Plaintiff BENJAMIN A. TRYE**

158.    On December 7, 2024, Defendant BRIAN A. GUZMAN unlawfully arrested Plaintiff BENJAMIN A. TRYE, allegedly for a tinted window violation, without probable cause and in violation of NYPD protocol, which requires a tint meter reading and issuance of a universal summons.

159.    Only after the arrest and detention had occurred, Defendant GUZMAN issued a DMV summons under Vehicle and Traffic Law § 375(12-a)(2), falsely implying that the stop and arrest had been legally supported by a tint meter measurement.

160.    The DMV summons was knowingly fabricated as a post hoc justification for a stop that was racially pretextual, unsupported by objective data, and in violation of internal departmental guidelines. No tint meter was ever used.

161.    This fabricated evidence formed the sole basis for Plaintiff TRYE's detention and processing at the 114th Precinct, depriving him of liberty without due process.

162.    As a direct result, Plaintiff TRYE suffered loss of liberty, reputational harm, and emotional and psychological injuries.

**B. Fabrication by Defendant ANTHONY N. RICCARDI Against Plaintiff HAROLD B. THOMAS**

163.    On December 7, 2024, Defendant ANTHONY N. RICCARDI knowingly charged Plaintiff HAROLD B. THOMAS with Obstructing Governmental Administration and Resisting Arrest, although THOMAS had offered no resistance and had already been restrained and assaulted by police officers.

164.    The charges were fabricated to retroactively justify the use of excessive force and unlawful arrest, and to shield Defendant RICCARDI and others from accountability.

165.    Other officers, including JOHN DOES 1–20, witnessed the incident, observed that Plaintiff THOMAS committed no crime, yet failed to intervene or correct the false charges, thereby contributing to the fabrication and continued detention.

166.    As a result, Plaintiff THOMAS was unlawfully detained for more than 17 hours and arraigned under Docket No. CR-042168-24QN. The charges were ultimately resolved through an Adjournment in Contemplation of Dismissal without his consent, after liberty had already been deprived.

167.    The fabricated charges directly caused Plaintiff THOMAS to suffer prolonged detention, humiliation, emotional distress, and violation of his due process rights.

**C. Supervisory Ratification and Deliberate Indifference**

168.    Following the incident, Defendants ANDREW C. DICKSON and EUMIR M. FERRER, who held supervisory authority at the scene, reviewed or had access to the events and

the fabricated accounts but took no action to intervene, document the misconduct, or VOID the arrests.

169.    In the hours and days following the incident, Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, and MIGUEL A. IGLESIAS were personally notified of the fabricated summons and charges and reviewed body-worn camera footage that conclusively showed Plaintiffs committed no crimes.

170.    Despite this actual knowledge, these high-ranking officials failed to: (a) initiate discipline; (b) VOID the false arrests or charges; (c) refer the matter to internal affairs, the Queens District Attorney's Office, or the U.S. Attorney's Office for the Eastern District of New York; (d) or take any steps to prevent further harm.

171.    Their deliberate inaction in the face of conclusive evidence of fabrication constitutes supervisory ratification of unlawful conduct, deliberate indifference to constitutional rights, and a separate violation of Plaintiffs' due process rights under clearly established law.

172.    The misconduct by Defendants BRIAN A. GUZMAN and ANTHONY N. RICCARDI, and the deliberate indifference or active ratification by Defendants JOHN DOES 1–20, ANDREW C. DICKSON, EUMIR M. FERRER, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, and ERIC L. ADAMS, was intentional, malicious, and undertaken under color of state law and within the scope of their employment with the New York City Police Department and the City of New York.

173.    Plaintiffs BENJAMIN A. TRYE and HAROLD B. THOMAS seek judgment against Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, AND JOHN DOES 1–20 for compensatory damages, punitive damages, reasonable

attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and such other and further relief as this
Court deems just and proper.

**COUNT VIII**
**DISCRIMINATORY POLICING – RACIAL PROFILING**
**(N.Y.C. ADMINISTRATIVE CODE § 8-107(17))**
**AGAINST DEFENDANTS THE CITY OF NEW YORK, BRIAN A. GUZMAN,**
**ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L.**
**ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, AND JOHN DOES 1–20**

174.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R.
TRYE, and HAROLD B. THOMAS repeat and reallege each and every preceding paragraph as
if fully set forth herein.

175.    New York City Administrative Code § 8-107(17)(a)(1) prohibits law enforcement
officers and agencies from engaging in bias-based profiling or selective enforcement based on
race, color, ethnicity, or national origin. Under § 8-107(6), aiding, abetting, inciting, or coercing
such discrimination is also unlawful.

176.    On December 7, 2024, Plaintiffs—all Black men—were subjected to a racially
pretextual stop by Defendant BRIAN A. GUZMAN, who lacked probable cause and failed to use
a tint meter, in violation of NYPD policy and state law. The stop occurred in a predominantly
industrial area and escalated into unlawful detention, assault, and fabricated charges without
legal justification.

177.    Defendant GUZMAN later issued a DMV summons to Plaintiff BENJAMIN A.
TRYE to retroactively justify the unlawful stop, while Defendant ANTHONY N. RICCARDI
fabricated criminal charges against Plaintiff HAROLD B. THOMAS, who had been forcibly
removed from the vehicle and beaten while restrained.

178.    Supervisory Defendants ANDREW C. DICKSON and EUMIR M. FERRER, who
were present on the scene, had the ability and duty to prevent or correct the racially

41

discriminatory treatment. Instead, they failed to intervene, permitted false narratives to proceed unchallenged, and engaged in obstruction of video documentation by shining flashlights into the eyes of Plaintiff ALISTER ALEXANDER.

179.    Defendants JOHN DOES 1–20 similarly participated in or enabled the discriminatory enforcement through either direct participation, failure to intervene, or by engaging in retaliatory or obstructive conduct.

180.    The racially motivated conduct alleged herein was not an isolated event. NYPD traffic stop data for Q4 2024 shows that Black drivers were disproportionately targeted for enforcement, representing 29.8% of stops despite comprising only 22.7% of the city's population. White residents, by contrast, accounted for 35.9% of the population but only 17.8% of stops. The discriminatory policing experienced by Plaintiffs is consistent with other high-profile incidents in which Black and Latino individuals were subjected to disproportionate force or stops, including those of Eric Garner, Delrawn Small, and Jaylin Ryan.

181.    The Floyd Monitor's 23rd Report found that over 90% of NYPD street stops involved Black or Latino individuals and that Neighborhood Safety Teams (NSTs) engaged in widespread unconstitutional stops and searches lacking legal justification. Supervisors approved nearly all stop reports without accountability, reinforcing systemic bias.

182.    Following the December 7, 2024 incident, high-ranking NYPD and City officials—Defendants ERIC L. ADAMS, JEFFREY B. MADDREY, and MIGUEL A. IGLESIAS—received direct notice from Plaintiff HAROLD B. THOMAS's family, reviewed body-worn camera footage, and acknowledged that Plaintiffs had committed no crime. Despite having legal authority to void the arrests, impose discipline, or initiate referrals, they did nothing.

183.    Defendants ADAMS, MADDREY, and IGLESIAS aided and abetted, acquiesced in, and ratified the racially discriminatory actions of subordinates by failing to take remedial action, and thereby violated § 8-107(6) and § 8-107(17) of the New York City Human Rights Law.

184.    Plaintiffs need not show but-for causation or comparative treatment under the NYCHRL. See *Williams v. New York City Housing Auth.*, 61 A.D.3d 62, 77–78 (1st Dep't 2009). It is sufficient that race was a motivating factor in Defendants' actions or omissions.

185.    As a direct and proximate result of Defendants' racially discriminatory conduct and failures to act, Plaintiffs suffered emotional distress, humiliation, reputational harm, loss of liberty, and other injuries compensable under § 8-502(a) of the NYCHRL.

186.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS seek judgment against Defendants THE CITY OF NEW YORK, BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, and JOHN DOES 1–20 for: Compensatory damages; Punitive damages (as permitted by § 8-502(a)); Declaratory and equitable relief; Reasonable attorneys' fees and costs pursuant to § 8-502(f); and Such other and further relief as this Court deems just and proper.

## JURY TRIAL

187.    Plaintiffs BENJAMIN A. TRYE, ALISTER ALEXANDER, WILFRED R. TRYE, and HAROLD B. THOMAS demand a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. On all federal claims brought pursuant to 42 U.S.C. § 1983—including violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution—an award of compensatory damages against Defendants BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, JOHN DOES 1–20, and THE CITY OF NEW YORK in an amount to be determined at trial;

B. An award of punitive damages against the individual Defendants—BRIAN A. GUZMAN, ANTHONY N. RICCARDI, ANDREW C. DICKSON, EUMIR M. FERRER, ERIC L. ADAMS, JEFFREY B. MADDREY, MIGUEL A. IGLESIAS, and JOHN DOES 1–20—in an amount sufficient to punish and deter future constitutional violations;

C. On the municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a finding of liability against Defendant THE CITY OF NEW YORK for maintaining unconstitutional customs, practices, and policies that were the moving force behind the violations of Plaintiffs' rights;

D. On the local law claims under the New York City Human Rights Law (Administrative Code § 8-107(17)), an award of compensatory and punitive damages (where authorized) against all applicable Defendants for engaging in or ratifying discriminatory profiling and selective enforcement based on race;

E. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and N.Y.C. Admin. Code § 8-502(f);

F. A declaratory judgment that the conduct of the Defendants violated Plaintiffs clearly established constitutional and statutory rights under federal and New York City law;

G. Prejudgment and post-judgment interest to the fullest extent permitted by law; and

H. Such other and further relief as this Court deems just and proper.

Dated:  April 15, 2025
        New York, NY

                 Respectfully submitted,

                 By:       _____s/Eric Sanders_____
                      Eric Sanders

                 Eric Sanders, Esq.
                 **THE SANDERS FIRM, P.C.**
                 30 Wall Street, 8th Floor
                 New York, NY 10005
                 (212) 652-2782 (Business Telephone)
                 (212) 652-2783 (Facsimile)

                 Website: http://www.thesandersfirmpc.com